# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

WANDA SMITH,

      Plaintiff,

v.                            Case No:  2:17-cv-90-FtM-38CM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

---

## REPORT AND RECOMMENDATION[1]

Plaintiff Wanda Smith seeks judicial review of the denial of her claims for disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the Joint Memorandum (Doc. 27),[2] and the applicable law.   For the reasons discussed herein, the Court recommends the

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

[2] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

decision of the Commissioner be reversed and this matter be remanded pursuant to 42 U.S.C. § 405(g), sentence four.

## I.    Issues on Appeal[3]

Plaintiff raises four issues on appeal: (1) whether new evidence submitted to the Appeals Council warrants remand; (2) whether the ALJ failed to inquire into a conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT"); (3) whether the ALJ improperly relied on the VE's testimony regarding whether certain jobs exist in significant numbers in the national economy; and (4) whether the ALJ properly evaluated the impact of Plaintiff's obesity, lower extremity pain and swelling, and partial deafness on her residual functional capacity ("RFC").

## II.    Procedural History and Summary of the ALJ's Decision

On December 3, 2013, Plaintiff filed applications for DIB and SSI, alleging her disability began July 10, 2013, due to heart problems, coronary artery disease, asthma, depression, and anemia.   Tr. 270–77, 309.   Plaintiff's claims were denied initially and upon reconsideration.   Tr. 101–28, 131–58.   On June 19, 2014, Plaintiff requested a hearing before an ALJ.   Tr. 203–04.   The ALJ held a hearing on September 17, 2015, during which Plaintiff and VE Bassey A. Duke testified.   Tr.

---

[3] Any issue not raised by Plaintiff on appeal is deemed to be waived.  *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

60, 168.   On October 13, 2015, ALJ Lawrence Levey found Plaintiff not disabled. Tr. 168–77.

At step one, the ALJ found Plaintiff "meets the insured status requirements of the Social Security Act through December 30, 2018."   Tr. 171.   The ALJ determined Plaintiff has not engaged in substantial gainful activity since her alleged onset date, July 10, 2013.   *Id.*   Next, the ALJ found Plaintiff has severe impairments of colitis, a history of coronary artery disease status-post coronary artery bypass graft (CABG), hypertension, a history of asthma, hyperlipidemia, borderline sleep apnea, obesity, anemia, osteoarthritis, and affective disorder.   *Id.*

The ALJ then concluded Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   *Id.*   The ALJ then determined that Plaintiff has the RFC to perform light work [4] with certain limitations, including that she "needs readily available access to a restroom facility, and is limited to performing simple, routine, and repetitive tasks in a work

---

[4] The regulations define light work as work that involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.   If someone can do light work, [it is determined] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b),

environment free of fast paced production requirements, involving only simple work related decisions. . . ." Tr. 172–73.  Next, the ALJ found Plaintiff is unable to perform her past relevant work as a medical assistant or English tutor.  Tr. 175. Considering Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff can do other jobs that exist in significant numbers in the national economy.  Tr. 176.  As a result, the ALJ found that Plaintiff is not disabled.  Tr. 176–77.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on December 21, 2016.  Tr. 1.  Accordingly, the October 13, 2015 decision is the final decision of the Commissioner.   Plaintiff filed an appeal with this Court on February 10, 2017.  Doc. 1.  The matter is now ripe for review.

### III.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.  *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971)).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).[5]  Substantial evidence is "more than a scintilla, i.e., evidence that must do

---

[5] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments.  *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c, 404.1527, 416.920a, 416.920c, 416.927 (effective March 27, 2017); SSR 16-3p, 2016 WL 1119029 (March 16, 2016).   The Court will apply rules and regulations in effect at the time of the ALJ's decision.   *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. §§ 404.1527, 416.927 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this

more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) (citation omitted).   Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).   The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV.   Discussion

### a. *Whether new evidence submitted to the Appeals Council warrants remand*

After the ALJ rendered his decision, Plaintiff submitted new evidence to the

---

section apply.").

Appeals Council, including treatment notes from Stand Up MRI of SW Florida (February 18 and 25, 2016), Mark Rubino, M.D. (March 17, 2016 through April 14, 2016), and Michael Barile, M.D. (March 30, 2016 and April 27, 2016), and progress notes from Neurosurgery of Florida dated October 20, 2016, almost a year after the ALJ's decision.   Tr. 2, 8–43.   The records from Neurosurgery of Florida, as recorded by Christopher Pham, D.O., reflect Plaintiff complained of neck and lower back pain following a motor vehicle accident on September 30, 2015.   Tr. 8.   Dr. Pham notes that Plaintiff went to the Naples Community Hospital Emergency Department following the accident and was discharged a few hours later.   *Id.*   She went back two days later, complaining of increasing neck and lower back pain, and was again discharged the same day.   *Id.*   She did not seek further treatment until two months later (one month after the ALJ decision), when she saw a chiropractor, and was referred to Drs. Rubino and Barile.   *Id.*   When Plaintiff saw neurologist Dr. Rubino in March and April 2016, she complained of headaches, chronic pain, persistent stiffness, and recurrent low back and neck pain with depression.   Tr. 27–33.   She also saw Dr. Barile around the same time, who performed cervical and lumbar nerve block procedures for pain. Tr. 17–18, 24–25.

Dr. Pham found Plaintiff's pre-existent degenerative cervical spinal disorder and degenerative lumber spinal disorder both were aggravated by her accident.   Tr. 11.   The MRIs showed disc space narrowing, disc herniation, bulging, and disc desiccation.   Tr. 9–11, 35–39.   The cervical spine MRI also showed a flattening of the ventral thecal sac with cord impingement.   Tr. 39.   Dr. Pham recommended

cervical spinal surgery.   Tr. 12.

Plaintiff argues the Appeals Council should have considered the above medical evidence because, although it was dated after the ALJ's decision, it related to an accident that occurred almost two weeks before the ALJ rendered his decision.   Doc. 27 at 12–13.   Plaintiff asserts this evidence is material because it demonstrates severe back and neck pain, the latter of which requires surgery.   *Id.* at 14.   The Commissioner responds the medical evidence is not chronologically relevant or material.   *Id.* at 14–15.   The Commissioner explains the evidence does not relate to an accident that predates the ALJ's decision because the records themselves illustrate that her condition significantly worsened after the ALJ decision.   *Id.* at 15–16.

The Court recommends the medical evidence Plaintiff submitted to the Appeals Council is material and chronologically relevant.   "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram,* 496 F.3d at 1262.   Although the Appeals Council has the discretion not to review the ALJ's denial of benefits, *see* 20 C.F.R. §§ 404.970(b), 416.1470(b), it "must consider new, material, and chronologically relevant evidence" that the claimant submits.   *Ingram,* 496 F.3d at 1261; *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b); *Washington v. Soc. Sec. Admin., Comm'r,* 806 F.3d 1317, 1320 (11th Cir. 2015).   New evidence is chronologically relevant if "it relates to the period on or before the date of the hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b).   Evidence is material

when it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986) (citation omitted); *see* 42 U.S.C. § 405(g).   Whether evidence submitted to the Appeals Council "is new, material, and chronologically relevant is reviewed *de novo*." *Yates v. Comm'r of Soc. Sec.*, 706 F. App'x 588, 594 (11th Cir. 2017) (citing *Washington*, 806 F.3d at 1320–21).

In denying review, the Appeals Council stated the new information "is about a later time," implicitly concluding the evidence was not chronologically relevant.   Tr. 2.   A medical opinion "based on treatment occurring after the date of the ALJ's decision may be chronologically relevant" if the medical provider reviewed the claimant's past medical history, and the opinion concerns a condition that existed before the ALJ's decision.   *Washington*, 806 F.3d at 1322–23.   The medical evidence here covered a period from roughly four to twelve months after the ALJ's decision, yet, particularly as to Dr. Pham's notes, such records refer to Plaintiff's past medical records existing shortly before the ALJ's decision and immediately following her accident.   Tr. 8–43, 177.   Dr. Pham indicated the accident aggravated previously existing conditions, even if he did not opine as to the extent of Plaintiff's pain in her neck and back within the days following the accident (as of the date of the ALJ's decision).   Tr. 8.   Dr. Barile also noted that Plaintiff's onset of pain began several days after the accident, and indicated, at least as of the date of his treatment notes (March 30, 2016), that certain physical activities like bending, twisting, driving, walking, sitting, lying down, and standing made the pain worse.   Tr. 19.   Although

it is unclear whether Dr. Barile reviewed any medical records predating the ALJ's decision, together with Dr. Pham's records who did, the new medical evidence taken as a whole related to a condition that existed before the ALJ's decision, and therefore is chronologically relevant. *See Washington*, 806 F.3d at 1322–23. The Appeals Council improperly discounted them because they were dated after the ALJ's decision without recognizing the intervening accident.

The Court recommends finding such evidence could have changed the administrative result and therefore also was material. For example, in the hearing before the ALJ, which predated the accident, Plaintiff testified that her back bothered her if she sat for long periods of time. Tr. 80. The ALJ found this testimony less than credible. Tr. 174. Nevertheless, if the accident aggravated Plaintiff's pain in these areas, the new evidence could affect the ALJ's RFC finding and ultimately whether Plaintiff was disabled as of the date of the ALJ's decision. *See Caulder v. Bowen*, 791 F.2d at 879 n.5 ("[T]he district court generally does not consider the impact of new evidence on the merits, but remands the case to the authority who would have evaluated it if it had been produced earlier."). Thus, the Court recommends the medical evidence submitted to the Appeals Council is new, chronologically relevant and material and warrants remand.

The Court also notes the Appeals Council did not develop the record surrounding Plaintiff's accident. *See Garoutte v. Berryhill*, No. 4:16-CV-2087-VEH, 2018 WL 905350, at * (N.D. Ala. Feb. 15, 2018) ("The duty to develop the record extends to the Appeals Council"). While the Commissioner argues the new medical

evidence did not contain any diagnoses regarding Plaintiff's condition on the date of the accident or shortly thereafter, Doc. 27 at 15–16, Dr. Pham referred to records from Naples Community Hospital Emergency Department that the Appeals Council did not request or consider.   Tr. 8.   The Court cannot assume as the Commissioner argues that the accident did not result in any worsening of Plaintiff's condition or further limitations until months later, when she sought additional treatment. Accordingly, on remand the Court recommends directing the Commissioner to request Plaintiff's hospital records relating to the accident.

### b. Whether the ALJ properly resolved a conflict between the VE's testimony and the DOT

Plaintiff argues that, during the hearing, the ALJ did not inquire into an apparent conflict between the VE's testimony and the DOT because the VE provided jobs that had a reasoning level of 2 and 3, but the ALJ had limited her to simple, routine, and repetitive tasks.   Doc. 27 at 21.   Upon questioning from Plaintiff's representative, Plaintiff contends the VE stated he looks at specific vocational preparation, education, training, or experience and stated they were all simple tasks but failed to address the reasoning levels of the job.   *Id.* at 21.   She argues all the jobs the ALJ found Plaintiff could perform also conflict with the limitations that Plaintiff needs readily available access to a restroom facility and only occasional interaction with the general public.   *Id.* at 23–24.   Plaintiff further argues the VE was not qualified because he worked with young adults rather than those closer to Plaintiff's age and did not have a degree in the relevant vocational field.   *Id.* at 23. She suggests the ALJ did not address her objections to the VE's qualifications in the

decision.  *Id.*   Last, Plaintiff argues the ALJ did not incorporate the opinion of Dr. Meyer—that she was moderately limited in her ability to complete a normal workday and week without interruptions—into his RFC assessment and his hypothetical posed to the VE.  *Id.* at 24.

The Commissioner responds that the ALJ specifically asked the VE if his testimony was consistent with the DOT, and the VE confirmed it was with the exception of tolerances for being off task.  *Id.* at 25–26; Tr. 92.  She argues the ALJ afforded Plaintiff the opportunity to examine the VE, who explained that all of the jobs could be performed in a few steps, such that they were consistent with her limitations to simple work.  Doc. 27 at 26.  The Commissioner argues Plaintiff has no evidence to rebut the VE's testimony, only her own non-expert opinion.  *Id.* at 26–27.  She further argues the Court should reject Plaintiff's argument that the VE was not qualified, as he had over ten years' experience, reviewed SSA rules and regulations regarding vocational factors, and the evidence in the case.  *Id.* at 27.  The Commissioner also argues that a review of the DOT reveals the descriptions of reasoning levels 2 and 3 require the application of common sense to carry out detailed but uninvolved written, oral, or (for level 3) diagrammatic instructions, which do not conflict with Dr. Bassey's testimony.  *Id.* at 27–28.  The Commissioner argues Plaintiff is speculating that ready access to the bathroom means frequent use so much that she would be off-task.  *Id.* at 29.  The Commissioner similarly rejects Plaintiff's objection to the mailroom clerk position as vague and speculative.  *Id.* at 29.  Last, the Commissioner argues Plaintiff mistakenly asserts the ALJ omitted limitations

from his hypothetical because Dr. Meyer indicated any limitations Plaintiff has in carrying out detailed instructions were accommodated by limiting her to doing routine tasks in a low demanding work environment, which the ALJ included in his hypothetical.   *Id.* at 30.

At step five of the sequential evaluation process, the burden shifts to the Commissioner to produce evidence that there is other work available in significant numbers in the national economy that the claimant can perform given his RFC. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).   When a claimant, such as here, cannot perform the full range of work at a given exertional level or has non-exertional impairments that significantly limit his basic work skills, an ALJ may rely solely on the testimony of a VE.   *Jones*, 190 F.3d at 1230; *Foote*, 67 F.3d at 1559; 20 C.F.R. §§ 404.1566, 416.966. A VE's testimony will constitute substantial evidence if the ALJ's hypothetical question includes all of a claimant's functional limitations.   *Jones*, 190 F.3d at 1229. "The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant."   *Ingram*, 496 F.3d at 1270 (citation and quotation marks omitted).   While an ALJ's hypothetical question must take into account all of a claimant's impairments, *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002), the question need not include impairments that the ALJ has properly determined to be unsupported by the evidence in the record.   *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

The Court first recommends the ALJ properly did not include Plaintiff's alleged

moderate limitation to complete a normal workday and workweek without interruptions in his RFC findings and hypothetical to the VE.   As the Commissioner correctly points out, Dr. Meyer concluded that Plaintiff's limitations could be accommodated if Plaintiff was only asked to do routine tasks.   Tr. 141.   In his RFC finding, the ALJ limited Plaintiff to "a work environment free of fast paced production requirements, involving only simple work related decisions, with few, if any, changes in the work place."   Tr. 173.   The ALJ included this limitation and all the others in his RFC finding in the hypothetical to the VE.   Tr. 90.   The ALJ therefore satisfied the requirement that an ALJ's hypothetical question must take into account all of a claimant's impairments. *Wilson*, 284 F.3d at 1227.   Accordingly, the Court recommends the ALJ properly did not include any additional moderate limitations based on Dr. Meyer's opinion in his RFC findings and hypothetical to the VE.   Tr. 141, 173.

Next, the Court recommends the ALJ properly relied on the VE's testimony after allowing Plaintiff's representative to inquire into an alleged conflict between the VE's testimony and the DOT.   Tr. 93–95.   Under SSR 00-4p, "[w]hen a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT."   SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000).   If there is a conflict, the ALJ is to "obtain a reasonable explanation for the apparent conflict."   *Id.*   If the ALJ asks the VE whether any conflicts exist between the DOT and the VE's statements, and the VE responds in the

negative, "the ALJ is not required independently to identify whether there is any inconsistency." *Cousins v. Colvin*, No. 2:12-cv-505-FtM-29, 2013 WL 5278271, at *6 (M.D. Fla. Aug. 23, 2013), *report and recommendation adopted as modified*, No. 2:12-cv-505-FtM-29DN, 2013 WL 5278483 (M.D. Fla. Sept. 18, 2013).

Here, the VE testified that his testimony was consistent with the information in the DOT (except for allowances for Plaintiff to be off task) based on his education, knowledge, background, and training.   Tr. 91.   At the hearing, after specifically highlighting the general education levels (GED) reasoning levels 2 and 3, as distinguished from the SVP[6] code, Plaintiff's attorney questioned the VE:

> Q:   Now, Dr. Duke, based on that reading of the defining of the GED level of two requiring detailed instructions, is there any conflict between that and a requirement for a limitation to simple decisionmaking and simple, routine work?
>
> A:   There is no conflict, counsel, because I have – in just one, two steps job, and also mail room clerk, and also assembler, small products.   These are all one, two steps types of skills required to do the job.

Tr. 94.   Plaintiff's representative pressed on as to why the jobs are required to perform detailed tasks rather than simple ones, and the VE opined that all of the jobs require only simple tasks, with one or two steps and can be learned in a day at most. Tr. 94–95.   The VE therefore explained, and the ALJ was entitled to rely upon, the explanation that the jobs he identified were consistent with the DOT and the ALJ's

---

[6] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."   SSR 00–4p, 2000 WL 1898704 at *3.

RFC finding.   Additionally, as noted by the ALJ, courts in this circuit have held that a required reasoning level of 2 or 3 is not inconsistent with the ability to perform simple tasks as long as those jobs have an SVP level of two, "which correlates to unskilled work."   Tr. 168 (citing *Hurtado v. Astrue*, Case No. 09-60930-CIV, 2010 WL 1850261 (S.D. Fla. Apr. 14, 2010)); *see also Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 873 (11th Cir. 2016); *Hobbs v. Colvin*, No. 8:13-cv-3233-T-24 MAP, 2015 WL 628763, at *5 (M.D. Fla. Feb. 12, 2015) (citation omitted); *Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 661-62 (11th Cir. 2007); *Gray v. Colvin*, No. 3:12-cv-506/EMT, 2014 WL 1118105, at *8 (N.D. Fla. Mar. 20, 2014)).   All three of the jobs the VE identified Plaintiff could perform have an SVP of 2.   Tr. 176.   SSR 00-4p provides that unskilled work corresponds to an SVP of 1 or 2 in the DOT.   *See* SSR 00-4p, 2000 WL 1898704, at *3.   Unskilled work requires "little or no judgment to do simple duties."   20 C.F.R. §§ 404.1568, 416.968(a).   Thus, these positions do not exceed Plaintiff's mental limitations in the RFC to perform simple, routine, repetitive work.   Tr. 172–73.   Because there was no inconsistency between the VE's opinion and the DOT, the ALJ's decision is supported by substantial evidence in this regard.

As to the VE's qualifications, Plaintiff is incorrect that the ALJ failed to address her objections.   Doc. 27 at 23.   The ALJ considered Plaintiff's objections and overruled them, explaining:

> The claimant's representative challenged the qualifications of the vocational expert.   The undersigned has rejected this challenge in light of Dr. Duke's demonstrated training, knowledge, and experience. Dr. Duke has a doctorate in educational leadership and a professional certificate in forensic vocational rehabilitation.   Exhibit 15B.   Dr. Duke has also been a consultant and vocational expert with the Social

> Security Administration for over six years.   Exhibit 15B.   The
> undersigned therefore finds that Dr. Duke's education, training, and
> experience are sufficient for the purposes of providing vocational
> testimony at this hearing.

Tr. 168.   The Court recommends finding the ALJ's conclusion the VE was qualified

to render an opinion about Plaintiff's ability to perform work was a reasonable one

supported by substantial evidence—the VE's education, training, and experience.

Tr. 168, 252–53.

### c. *Whether substantial evidence supports the ALJ's determination as to the number of jobs in the national economy*

Plaintiff argues the ALJ should not have relied on the VE's testimony as to the

number of jobs in the national economy she could perform, citing the Seventh Circuit

Court of Appeal's decision in *Browning v. Colvin*, 766 F.3d 702 (7th Cir. 2014).   Doc.

27 at 31–32.   She argues the VE impermissibly relied only on the Job Browser Pro.

*Id.* at 32.   Plaintiff further contends that the number of available jobs, 18,085, is not

significant in the national economy.   Doc. 27 at 33.   The Commissioner responds

that the VE did not testify he was exclusively relying on the Job Browser but also his

own expertise.   *Id.* at 34.   She argues that the VE only gave a random sampling of

jobs, meaning there were others, and there is no minimum number of jobs to qualify

as significant in the Eleventh Circuit.   *Id.* at 35.

At the hearing, Plaintiff's representative could not articulate any standard by

which a VE could accurately calculate job numbers, suggesting she was essentially

making a generalized objection for appellate purposes and that a reliable method did

not exist:

ALJ:    [T]he difficulty that I have with that is I'm required by the statute, by the regulations, to determine whether there are significant number[s] of jobs that Ms. Smith could perform in light of her age, her education, her work experience, and her residual functional capacity.

I guess my question is how would I determine that in the absence of the VE testimony that you're objecting to as unreliable and not relevant in terms of numbers of jobs? Do you have a suggestion for that?

ATTY:   I did.   I think that's something that the agency significantly needs to address.   There are wide varieties of numbers that VEs will provide with exactly the same job titles, and the sources of information - - I mean I'd like to address it at the time.   Again, if there are significant issues with the numbers that Dr. Duke testifies to today, I will certainly address them.

But, yeah, I wish I had an answer.   I think that it's a significant issue that the agency needs to address, Judge. There are sources which are permitted to take administrative notice of, but those sources don't really give the numbers for individual jobs, and then most vocational experts, in my experience, aren't able to provide any sort of logic for getting to specific jobs from the numbers they're permitted to take administrative notice of.

ALJ:    Well Dr. Duke may be able to do that.   But it would seem that the solution wouldn't be giving everybody disability benefits until they come up with a different system.

Tr. 68–69.   Plaintiff's representative then indicated she would make objections as necessary.   Tr. 69.   She later questioned Dr. Duke as to how many of the jobs initially listed would be consistent with the limitations of the hypothetical posed to him, and he reduced the number of the jobs accordingly, testifying that, in his view, the following jobs existed in the national economy that someone with the limitations in the hypothetical could perform: 4,700 (product assembler), 8,900 (price marker),

4,485 (mail room clerk).   Tr. 96-97.   Following this questioning, Plaintiff's representative did not raise any specific objections to the ALJ regarding the VE's calculations of these numbers.   Tr. 97-100.

The language from the court in *Browning* was dicta, criticizing the DOT as obsolete and expressing doubts as to the "source or accuracy of the numbers of jobs that vocational experts . . . could claim the plaintiff could perform that exist in plaintiff's area, the region, or the nation. . . .   [T]here are no credible statistics of the number of jobs doable in each job category by claimants like the plaintiff." *Rivera v. Berryhill*, 242 F. Supp. 3d 1226, 1241 (D.N.M. 2017) (quoting *Browning*, 766 F.3d at 709).   In the Eleventh Circuit, however, a VE may rely on his knowledge and expertise without producing detailed reports or statistics in support of his testimony. *See Curcio v. Comm'r of Soc. Sec.*, 386 F. Appx 924, 926 (11th Cir. 2010); *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012).   Substantial evidence supports the ALJ's reliance on the VE's testimony in this case, which was based on his experience, rather than simply the Job Browser Pro.   Tr. 96–97.   The VE was questioned as to the additional limitations that would reduce the number of jobs within this category and gave his opinion without any specific objection from Plaintiff. *Id.*   The Court therefore recommends finding the ALJ properly relied on the VE's testimony to determine the number of jobs Plaintiff could perform in the national economy.

As to the actual number of jobs, work exists in the national economy if it exists in significant numbers either in the region where a claimant lives or in several

regions of the country.   *See* 42 U.S.C. § 1382c(a)(3)(B); 423(d)(2)(A); 20 C.F.R §§ 404.1566(a), 416.966; *Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005).   In this context, the Eleventh Circuit has held that "the appropriate focus is the national economy."   *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 934 (11th Cir. 2015); *see also Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987).   As to what constitutes a "significant number" in this context, the Eleventh Circuit has not fashioned a bright line rule.   As the court recently noted,

> This Court has never held that a minimum numerical count of jobs must be identified in order to constitute work that "exists in significant numbers" under the statute and regulations.   We have concluded, however, that the "appropriate focus under the regulation is the national economy," not the local economy in which the claimant lives.

*Atha*, 616 F. App'x at 934 (citing *Allen* 816 F.2d at 603).   In *Atha*, the court upheld the ALJ's decision that 440 jobs in Alabama and 23,800 jobs nationally, which the VE testified that Plaintiff could perform, constituted a significant number.   *Id.* at 935. In *Allen*, the court of appeals upheld the ALJ's finding that work existed in significant numbers where the VE testified that there were 174 small appliance repairman positions in the area of Georgia where the claimant lived, 1,600 general appliance repair jobs in the state, and 80,000 such jobs nationally, of which "[a] considerable number ... [were] in the small appliance field."   *Allen*, 816 F.2d at 602.   The court stressed that because an ALJ's finding as to the existence of a sufficient quantity of jobs is a finding of fact reviewed under the substantial evidence standard, it could not reweigh the evidence or substitute its judgment for that of the Secretary.   *Id.*   Here, the ALJ found there were 18,085 jobs Plaintiff could perform based on the VE's

testimony.   The Court recommends finding that substantial evidence supports this finding.

> ### d. *Whether the ALJ properly evaluated the impact of Plaintiff's obesity, leg and ankle pain and swelling, and deafness in one ear on her RFC*

The ALJ found Plaintiff's obesity to be a severe impairment and listed all of her alleged limitations in explaining his RFC finding, including lower extremity swelling; constant pain in her back, legs, ankles and knees (which is exacerbated by long periods of walking, bending, reaching, sitting or standing for extended periods); difficulty hearing; and using a cane to walk.   Tr. 171, 173.   Plaintiff argues the ALJ failed to consider her lower extremity pain, her deafness in one ear, and her obesity. Doc. 27 at 37.   Specially, she argues the ALJ did not comply with SSR 02-1p by not assessing the effect of her exertional abilities such as standing or walking.[7]   *Id.* The Commissioner responds Plaintiff's list of symptoms do not suggest what limitations she might have had as a result of them.   *Id.* at 39.   She argues substantial evidence supports the ALJ's credibility findings that Plaintiff was not as physically limited as she contends.   *Id.* at 39–40.   The Commissioner also responds the ALJ evaluated Plaintiff's obesity in compliance with SSR 02-1p, and substantial

---

[7] Plaintiff suggests that given her age, a restriction more limited than light exertion may warrant a finding of disabled if the ALJ had applied the borderline Medical-Vocational Rule 201.14.   Doc. 27 at 37.   Plaintiff does not adequately address the issue in the Joint Memorandum, citing only *Williams v. Bowen*, No. 86-3763, 1987 WL 9148, at *2 (E.D. Pa. April. 6, 1987), and the Commissioner does not respond to it.   Doc. 27 at 38–40.   The Court need not consider an issue Plaintiff did not meaningfully develop and therefore did not preserve for appeal.   *See Atha*, 616 F. App'x at 934 n.3 ("[A] party fails to adequately brief an issue when he does not plainly and prominently raise it, for instance by devoting a discrete section of his argument to those claims." (internal citation and quotation marks omitted)).

evidence supports the ALJ's finding that she could perform six hours of standing and walking.  *Id.* at 40.

The RFC is the most that a claimant can do despite her limitations.  *See* 20 C.F.R. §§ 404.1545(a), 416.945(a).  At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC.  *See* 20 C.F.R. §§ 404.1546(c), 416.946(c).  The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements.  20 C.F.R. §§ 404.1545(a), 416.945(a).  The claimant's age, education, work experience, and whether she can return to her past relevant work are considered in determining her RFC, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite her impairments.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

SSR 02-1p explains that "[o]besity is a complex, chronic disease characterized by excessive accumulation of body fat.  Obesity is generally the result of a combination of factors (e.g., genetic, environmental, and behavioral)."  SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002).  Further, "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately."  *Id.* at *1.  The ALJ should "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's [RFC]."  *Id.*

On the other hand, the Ruling states, the ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments.   Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment.   [The ALJ] will evaluate each case based on the information in the case record." *Id.* at *6.

Here, the Court recommends the ALJ properly considered the impact of Plaintiff's obesity on her RFC along with her complaints of pain and difficulty walking and hearing.   Contrary to Plaintiff's argument, the ALJ considered all of these issues in assessing her RFC.   Tr. 173–74.   The ALJ stated he "considered [Plaintiff's] obesity, pursuant to SSSR 02-1p, and it is reflected in the assessment of [Plaintiff's] postural limitations."   Tr. 174.   He accordingly limited her use of her lower extremities to occasionally and precluded her from any climbing ladders, ropers, or scaffolds, and from kneeling, crouching, and crawling.   Tr. 174.   Substantial evidence supports the ALJ's RFC finding, as Plaintiff's treatment notes reflect she had a normal gait, no impaired movement, full strength and range of motion in the spine and extremities, and regularly exercised.   Tr. 568, 614, 617, 624, 654, 697, 703, 708, 715, 726, 741, 750–51, 754, 816.

Moreover, Plaintiff does not provide any evidence that her alleged limitations would impact her ability to work.   It is Plaintiff's burden to establish that her obesity and other limitations affect her ability to perform basic work activities.   *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of a 'deviation from purely medical standards of bodily perfection or normality' is

insufficient; instead, the claimant must show the effect of the impairment on her ability to work." (internal citations omitted)).   Yet, Plaintiff provides no physician's opinion that her obesity, lower extremity pain and swelling, or partial deafness causes any additional limitations on her RFC.   Doc. 27 at 37–38.   She also does not show how these conditions affect her RFC beyond what the ALJ found in his decision. *Id.*   Although the Court recommends that substantial evidence, available to the ALJ at the time she rendered her decision, supports the ALJ's findings at that time, newly submitted evidence to the Appeals Council could reasonably change the result, and should have been considered.   Accordingly, the Court recommends on remand the ALJ re-evaluate Plaintiff's RFC in light of the new evidence.[8]

## III.   Conclusion

Upon review of the record, the undersigned recommends that the Appeals Council failed to consider new, material, and chronologically relevant evidence surrounding a motor vehicle accident Plaintiff was involved in before the ALJ rendered her decision.   The Court therefore recommends reversal and remand.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

---

[8] Similarly, if Plaintiff's RFC changes in light of the newly submitted evidence, the number of jobs she could perform given her impairments also will change. The Court therefore recommends directing the Commissioner to re-evaluate whether there is other work available in significant numbers that Plaintiff can perform given her RFC.

1. The decision of the Commissioner be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for the Commissioner to:

A.     Consider the new evidence provided to the Appeals Council;

B.     Request Plaintiff's hospital records immediately following the motor vehicle accident;

C.     Re-evaluate Plaintiff's Residual Functional Capacity in light of the new evidence;

D.     Re-evaluate whether there is other work available in significant numbers that Plaintiff can perform given her re-evaluated Residual Functional Capacity; and

E.     Make any other determinations consistent with this Opinion and Order, or in the interests of justice.

2.     The Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of Plaintiff Wanda Smith, and close the file.

**DONE** and **ENTERED** in Fort Myers, Florida on this 12th day of June, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record